The Consolidated Barb Wire Company v. The
Guthrie National Bank et al.

**No. 120.**

Chattel Mortgage—*funds arising from sale of mortgaged property distributed among claimants.* Where, in a contest between a Guthrie bank, the holder of a second mortgage against a stock of goods in Oklahoma, and a Kansas corporation, the holder of a second mortgage against a stock in Kansas, which had both belonged to and been mortgaged by the same firm, and which were sold by the owner of first mortgages on each for the satisfaction of a single debt secured by such mortgages, the proceeds of neither sale being sufficient to discharge the entire first-mortgage debt but the total being more than sufficient; and where the first mortgagee retained and specifically set apart of the proceeds derived from the sale of the Oklahoma stock, which was the first one sold, an amount equal to the claim of the Guthrie bank, to be paid to the party entitled thereto, and such fund, prior to the suit by the said bank, had been deposited in a bank at Winfield, Kan., where the action was brought and the litigation had relating to the ownership of such fund, *held*, that the sale of the goods in Oklahoma did not have the effect to discharge *ipso facto*, to the extent of the proceeds thereof, the mortgage debt; and, *held further*, that, under the evidence, the creditors holding the paramount lien were under no legal obligation to apply in payment of their claim the entire proceeds of the sale first made.

Error from Cowley District Court. Hon. M. G. Troup, Judge. Opinion filed December 20, 1897. Affirmed.

*John W. Shartel*, for plaintiff in error.
*S. L. Overstreet*, for defendants in error.

Milton, J. This action was commenced by the Guthrie National Bank and J. W. McNeal, its president, against John A. Eaton and Thomas J. Eaton, partners under the firm name of the Farmers' Bank, to recover the sum of $1525, which said plaintiffs claimed by virtue of a chattel mortgage. The Eatons filed an answer showing that they had in their possession the amount of money sued for, resulting from the sale under the first mortgage, covering the same merchandise in the city of Guthrie against which the said plaintiffs held the second mortgage, and that the Consolidated Barb Wire Company was an adverse claimant without collusion with them ; and asking that they be permitted to pay the money into court, that the Wire Company be made a party, and that the controversy be litigated between said adverse claimants. The Wire Company, which had succeeded to the interests of several other mortgagees, became a party, and filed its answer, claiming $1138 of said fund. After the evidence was introduced, the court made findings of fact and conclusions of law and rendered judgment in favor of the Guthrie National Bank for the full amount of the said fund held by Eaton & Eaton. To reverse this judgment the Wire Company brings these proceedings.

Counsel for plaintiff in error presents a single assignment of error in his brief, namely, that the third

WIRE CO. V. BANK.                777

Dec. 20, 1897.        Opinion.   Milton, J.            C. Div.

conclusion of law made by the court is erroneous. Said conclusion is as follows :

"That the plaintiff is entitled to the $1525 now in the hands of the defendant, the Farmers' Bank, as against any right, title or interest which the interpleader, the Consolidated Barb Wire Company, may have in and to the said fund."

The following statement is from the findings of the court :

"August 21, 1890, Eaton & Eaton took possession of two stocks of hardware, one at Winfield, Kan., and the other at Guthrie, Okla., under two separate chattel mortgages securing the same indebtedness, both of which had been executed on August 16, preceding, by Randall & Lyon, on said stocks of goods, to secure a debt of $8500 due the mortgagees as bankers. Said mortgages were filed in the proper offices on the day possession of the goods was thus taken. In the morning of the same day, and after Eaton & Eaton were in possession of the store at Guthrie, Lyon, one of the firm of Randall & Lyon, executed and delivered to J. W. McNeal, president of the Guthrie Bank, for said Bank, a second mortgage in the firm name on each of the stocks of goods, to secure a debt of fifteen hundred dollars due said Bank. This mortgage was immediately filed for record in Guthrie and a copy thereof was filed in Winfield on the next day. In the evening of August 21, Randall, for the firm of Randall & Lyon, gave to the Wire Company and several other creditors mortgages in various amounts upon both stocks of goods, and the said mortgages were filed in Winfield at ten o'clock P. M. of the same day. They do not appear to have been filed in Guthrie.

After taking possession of the Winfield stock, Eaton & Eaton began immediately to sell the same at private sale and to collect accounts due the mortgagors. September 18, 1890, they sold the Guthrie stock at public sale, after due advertising thereof, to a party representing a number of creditors of the mortgagors, for the sum of $6818. Up to about October 1, 1890,

Eaton & Eaton had realized out of the private sales made by them from the Winfield stock the sum of $2076. On October 4, they sold the residue of said stock at public sale, after due notice, for the sum of $4900. From the book accounts they had collected $223.33, and the aggregate amount received from these three sources was $7200. This, together with the proceeds of the Guthrie sale, made the total amount received by Eaton & Eaton, $14,018. The evidence shows that an unsecured creditor had attached a portion of the Guthrie stock after the Eatons took possession, and that the latter reserved $2000 of the proceeds of the sale, by depositing said amount in their bank at Winfield, to await the result of the litigation. They also deposited $1525, the amount the Guthrie Bank claimed was due it from said proceeds, and have ever since stood ready to pay the last-named amount to the party or parties legally entitled thereto. From the proceeds of both sales, Eaton & Eaton paid the expenses thereof and of the litigation referred to, which resulted in their favor, fully satisfied three chattel mortgages, and applied the sum of $1766 then remaining on hand from the proceeds of the Winfield stock, in part payment of the amount due the St. Louis Wire Mill Company upon its mortgage and of the debt secured by the mortgage of plaintiff in error. The latter has received payment of but little more than one-half of its entire claim, while five-sixths of that of the St. Louis Wire Mill Company is paid.''

From the brief of counsel for plaintiff in error, it would appear that the doctrine of the marshaling of assets was invoked in favor of the plaintiff below, and that the judgment of the court was affected by the application of that doctrine; while counsel for the defendant in error, the Guthrie National Bank, admits that the doctrine cannot properly be applied under the facts of this case. Counsel for plaintiff in error argues that this doctrine cannot be invoked in favor of the plaintiff below, on account of the fact that the laws of

two separate jurisdictions are involved.   He also contends that if the Guthrie Bank ever had such right it lost the same by failure to make its claim before the Guthrie stock was sold.   Both of these propositions seem to have some merit.   This is not a clear case for the application of the doctrine of marshaling of assets in favor of plaintiff below, as it appears that Eaton & Eaton and plaintiff each had liens upon both stocks of merchandise.   There is also a conflict between junior lien holders as to one of the funds.   But it is a case where, as between the Guthrie Bank and the Wire Company, the equitable rights of the said parties can be discovered and declared.   This controversy is between the parties last named only, and results from an effort on the part of each to have a rule suspended as to itself and invoked as to its antagonist.

In discussing the nature of the equity in a case where the doctrine of the marshaling of assets is applicable, the American and English Encyclopedia of Law ( vol. 14, p. 686) states this proposition :

" The equity of the junior creditor is not against the paramount creditor, but against the debtor himself.   By its exercise, the junior creditor prevents the debtor from retaining the singly charged estate free from both debts."

And in a note it further says :

" The equity being against the debtor, it is equally against his judgment creditors whose liens were obtained subsequently to the lien of the junior creditor in whose favor the equity is enforced."

A writer in the American Law Register (vol. 27, p. 739) states the rule as follows :

" If a paramount incumbrancer of two funds, by his election of remedies, disappoints a junior creditor, who has a lien upon one of them only, the latter shall, to that extent, be substituted to the lien of the paramount

incumbrancer upon the other fund bound by it, as against the debtor and all claiming under him by lien or title subsequent in time.''

Applying this rule, the Guthrie Bank would be substituted to the lien of Eaton & Eaton upon the Winfield fund, to the extent of the former's lien under its chattel mortgage, as against the Wire Company, for the latter's mortgage is subsequent in time to that of the Bank. This furnishes a legal basis upon which the equity may safely rest. But, aside from this consideration, we think the right of the Guthrie Bank to this special fund is clear.

The only important question that remains for our consideration is as to the effect of the sale of the entire stock of goods at Guthrie before the public sale of the goods at Winfield was made. Counsel claim that Eaton & Eaton had a right to elect which security they would exhaust, and ''having elected to exhaust the security in Oklahoma first, the sale of the stock of goods at Guthrie for the satisfaction of the mortgage of the Farmers' Bank was *pro tanto* an absolute extinguishment and payment of so much of that mortgage, and the stock at Winfield was released to the extent of the proceeds of the sale realized at Guthrie.'' We observe that the amount received by Eaton & Eaton from the private sales of the Winfield stock was probably more than fifteen hundred dollars up to the date of the Guthrie sale. Counsel cites, as supporting his contention, *Bragunier v. Iron Co.* (41 Kan. 542) and *Long v. Moore* (56 Mich. 23), and some other cases which do not seem in point. In the first case cited, the mortgagees, in possession by their agent, were served with summons in garnishment, on a claim by another creditor of the mortgagor, after they had re-received from private sales of the stock sufficient funds

WIRE CO. v. BANK. 781

Dec. 20, 1897.          Opinion. Milton, J.          C. Div.

to satisfy their claim under the mortgage, and the expenses. The court held that since the funds on hand were more than the amount of the mortgage debt, the latter was to be considered as paid and satisfied. In the Michigan case, the proceeds of the sale under a bill of sale were sufficient to pay the debt secured by the bill of sale and also a debt secured by a chattel mortgage on the property, which was really owned by the holder of the bill of sale. The court held that the mortgage was by such sale actually satisfied, unless facts appeared to excuse the refusal to apply in payment of the mortgage moneys received from the sale.

In both these cases it, will be observed that the proceeds of the sale under the mortgage and the bill of sale, respectively, brought in sufficient funds to satisfy the entire debt. In the case at bar, the proceeds of the sale at Guthrie were insufficient to discharge the debt. Of course, the mortgage lien upon the chattels was destroyed by the sale, but the proceeds arising from the sale of those chattels remained in the hands of the superior lien holders to be by them applied. A distinction should be made between the extinguishment of the mortgage itself by a sale of all the mortgaged goods, and an extinguishment of the debt secured thereby. There does not seem to be any controlling legal reason why Eaton & Eaton should have been required to apply all the proceeds of the Guthrie sale, aside from expenses, in payment of their claim. There were facts sufficient to jusify them as prudent men in selling the whole stock at public sale and in setting apart certain portions of the proceeds, as was done. Bringing a part of the proceeds of that sale to Kansas, did not in itself destroy the right of the Guthrie Bank to the same, any more than bringing a part of the goods, which they might have refrained from

selling, would have done. Whenever the claim of Eaton & Eaton was finally satisfied from the proceeds of both sales, then the right of the Guthrie Bank became clear to such portion of the proceeds of the Guthrie sale as remained in their hands. As the proceeds of neither sale separately were enough to satisfy their claim, it was not wrong or illegal for them to use part of the proceeds from each of such sales, as in fact they did. They seem to have dispensed these funds with a due regard to the rights of parties holding second mortgages against the Winfield stock. The fact that part of the funds derived from the Guthrie sale was brought to Cowley County, certainly did not give the Wire Company any lien thereon by virtue of its chattel mortgage; and it did not in itself destroy the lien existing in favor of the Guthrie Bank under its mortgage. The important fact is, that a part of the proceeds of the Guthrie sale was *unapplied* at the time this action was brought. The true owner thereof, by this action, now makes a proper claim therefor. Equity will "follow the law" herein sufficiently to hold that the lien of the Guthrie Bank under its chattel mortgage will be recognized as superior to that of plaintiff in error, which has no semblance of a lien against the specific fund in question.

We think the judgment of the District Court is correct, and the same is affirmed.